## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MICHAEL E. MORGAN,**
            **Plaintiff,**

                                **Civil Action 2:04-CV-907**

**vs.**

                                **Magistrate Judge Norah McCann King**

**MASTERFOODS USA, INC.,**
            **Defendant.**

## OPINION AND ORDER

This is an employment action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Ohio Revised Code ("O.R.C.") §§ 4112.02, 4112.99 in which Michael E. Morgan ("plaintiff") claims that he has been subjected to discrimination on account of his mental disability, and that he was retaliated against for having filed a charge of disability discrimination. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Defendant's Motion for Summary Judgment*, Doc. No. 30, and on *Defendant's Motion to Strike Portions of Plaintiff's Affidavit*, Doc. No. 41. For the reasons that follow, *Defendant's Motion for Summary Judgment* is **GRANTED** and *Defendant's Motion to Strike* is **DENIED** as moot.

## I. FACTS

Plaintiff is an employee of Masterfoods USA, Inc., ("defendant" or "Masterfoods"), formerly Kal Kan Foods, Inc. *Complaint* ¶ 2; *Plaintiff's Deposition* ("*Pl. Dep.*") at 42, attached

as *Exhibit A* to *Defendant's Motion for Summary Judgment*.[1]  Plaintiff began his employment

with defendant in November 2000 as a Zone 12 Lid Feed Operator making $14.42 per hour.

*Complaint* ¶ 2; *Pl. Dep.* at 42, 45.  Positions at Masterfoods are classified into "Zonal

categories" based on levels of experience and job responsibilities.  *Deposition of James Abbott*[2]

("*Abbot Dep.*") at 23, *Exhibit E.*  Zone one is the highest category.  *Id.*  Compensation is

commensurate with Zone classifications.  *See id.*

        Shortly after plaintiff began his employment with defendant, he informed defendant that

he had a history of depression and that he was taking medication and participating in

psychotherapy and counseling sessions to assist him in coping with the condition.  *Plaintiff's*

*Affidavit* ("*Pl. Aff.*")  ¶¶ 5-7, attached to *Response in Opposition to Defendant's Motion for*

*Summary Judgment* ("*Plaintiff's Memorandum Contra*").  In the summer and fall prior to being

hired at Masterfoods, plaintiff underwent approximately 18 electroshock treatments, which

"helped [him] to deal with depression."  *Id.* ¶ 8.  Plaintiff has been told by his doctors that he

"will need to continue regular counseling for the rest of [his] life."  *Id.* ¶ 7.  However, plaintiff's

"work performance has been good throughout [his] employment" with Masterfoods  *Id.* ¶ 2.

        In September 2002, plaintiff was assigned to the position of Zone 10 Flex Packaging

Intermediate on a temporary basis.  *See Complaint* ¶ 7; *Exhibit D.*  Plaintiff worked in that

position until May 2003.  *See Complaint* ¶ 7.  Plaintiff was paid $16.45 per hour for the Zone 10

position from his start date through January 26, 2003.  *See Exhibit D.*  On January 26, 2003,

---

     [1]All exhibits referred to herein are attached to *Defendant's Motion for Summary Judgment* unless otherwise noted.

     [2]Mr. Abbot was plaintiff's manager during the relevant time period.  *Abbot Dep.* at 22.

2

however, plaintiff's pay was reduced to $15.45 per hour. *See Exhibit H*. Defendant contends that its personnel manager, Edmond Michael Falk, III, reduced plaintiff's pay because plaintiff had inadvertently been paid more than company policy permitted. *See Edmond Michael Falk III Deposition* ("*Falk Dep.*") at 7, *Exhibit I*. The policy upon which defendant relies requires that employees temporarily assigned to higher Zonal categories receive fifty cents more per hour per higher Zone. *See Falk Dep.* at 62-66; *Exhibit H*; *Pl. Dep.* at 217. By this calculation, plaintiff's pay increase should have been $1.00 per hour more than his regular rate of pay, or $15.42 per hour, instead of the $16.45 per hour that he was initially paid.

Plaintiff asserts that he was doing well in the temporary position, and that he "enjoyed the position and wanted to stay in it." *Pl. Aff.* ¶ 12. Plaintiff's psychiatrist wrote a letter to defendant indicating that plaintiff's mental condition had improved since his assignment to the new position; the psychiatrist expressed his opinion that plaintiff would benefit by a permanent assignment to the position. *See id.*; *Exhibit 7* attached to *Complaint*. Moreover, plaintiff alleges that the policy on which defendant relies is not applicable to him and that the relevant policy "clearly states that a person on a temporary assignment can have his salary increased all the way up to the level of the regular employees in those positions if the Area Manager and the Personnel Manager sign off on such an increase." *Pl. Aff.* ¶ 13 and *Exhibit 8* attached thereto. Plaintiff insists that the real motivation for the reduction in his pay was discrimination based on his depression. *See Complaint* ¶ 10.

On June 6, 2003, plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging "disability discrimination by defendant for its failure to pay him appropriately" in the temporary Zone 10 position. *Id.* ¶ 11.

3

From mid-October 2003 to mid-February 2004, plaintiff was on an approved medical leave of absence because of his depression. *See Complaint* ¶ 12. Upon his return to work, plaintiff alleges, he "was repeatedly threatened by his new supervisor that she was going to give him a formal reprimand for excessive absenteeism." *Id.* ¶ 13. Plaintiff alleges that this threat was also discriminatory in nature and was made in retaliation for his having filed the charge with the EEOC. *See id.*

In 2004, plaintiff also applied for, *i.e.*, "bid," on two jobs. He alleges that he was denied the positions because his manager, Cheryl Kirchofer, refused to approve the bids, citing plaintiff's poor attendance. *Id.* ¶ 14. However, plaintiff complains that one of his coworkers, who did not have "mental health problems," was treated more favorably than plaintiff with regard to being awarded jobs on which he bid. *See id.* ¶ 15. Plaintiff alleges that Ms. Kirchofer's actions were also discriminatory and were taken in retaliation for plaintiff's having filed the disability discrimination charge with the EEOC. *See id.* ¶ 16.

In March 2004, a slicer machine on which plaintiff was working "jammed." *Pl. Aff.* ¶ 16. Plaintiff alleges that this machine jammed routinely and that, like other workers, he used a metal bar to attempt to "unjam" the machine but that the bar "became lodged down in the machine." *Id.* Defendant launched a formal investigation into the incident which, plaintiff contends, was done in retaliation for his having filed the June 2003 EEOC charge. *See id.*

On September 22, 2004, plaintiff filed this action.

In February 2005, Ms. Kirchofer evaluated plaintiff's work and characterized his attendance as unacceptable. Plaintiff believes that she unfairly rated his work because "[m]any areas [he] had previously been rated well in, and which [he] would later be rated well in, were

marked as unsatisfactory." *Id.* ¶ 15.

Plaintiff claims that he "was unfairly branded as a problem employee due to [his] depression" and that the Area Manager commented "that if it were up to him he'd fire" plaintiff. *Id.* ¶ 17.  Plaintiff also characterizes this treatment as discriminatory and retaliatory.

## II.  STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which  provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ."  *Id.*  In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]."  *Anderson*, 477 U.S. at 252.

5

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once moving party has proved that no material facts exist, non-moving party must do more than raise metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III.    ANALYSIS

Asserting claims under the ADA and Ohio law, plaintiff alleges that he has been discriminated against because of his depression and that he has been retaliated against for having filed a charge of disability discrimination with the EEOC on June 6, 2003. The same standards applicable to plaintiff's ADA claims apply to his claims under Ohio law, O.R.C. § 4112.02(A). *See Cloke v. West Clermont Local Sch. Dist. Bd. of Educ.*, 409 F. Supp.2d 927, 933 (S.D. Ohio 2006) (J. Rice) (citing *Burns v. Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 842 (6th Cir. 1996) and *Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569 (1998)).

## A.    Disability Discrimination

In a case such as this, where a plaintiff seeks to establish his case indirectly without direct proof of discrimination, the plaintiff must first establish a *prima facie* case of discrimination by showing that:

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the

6

employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). If the plaintiff is unable to point to at least a factual dispute as to any one of these elements, summary judgment in the defendant's favor is warranted. *See id.* at 1185-86 ("If the plaintiff fails to establish a predicate fact necessary to create the presumption of unlawful intent,...the 'burden' never shifts to the defendant."). Otherwise, the defendant must "offer a legitimate nondiscriminatory explanation for its action." *Id.* If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual, and that the real reason for the action was discrimination. *See id.* The plaintiff at all times retains the ultimate burden of persuasion. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

In the case *sub judice*, defendant contends that plaintiff cannot meet his burden of establishing a *prima facie* case of disability discrimination because he cannot show that he is disabled as that term is defined under the ADA. *See Defendant's Motion for Summary Judgment* at 7-11. The Court agrees.

### 1. Disability under the ADA.

Under the ADA, a disability is defined, in relevant part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Plaintiff alleges, and defendant does not dispute, that his depression is a mental impairment. *See* 29 C.F.R. § 1630.2(h)(1) (1995) (defining impairment). *See also Swanson v. Univ. of Cincinnati*, 268 F.3d 307 (6th Cir. 2001) (analyzing depression as an

impairment within the meaning of the ADA).[3]  Plaintiff avers that

> [m]y depression profoundly affects my life.  I am quite simply depressed and
> without energy or motivation.  Obviously, I have been close to taking my own
> life.  I have needed to take time off at Masterfoods on a number of occasions,
> several times for several months.  My depression was a factor in me going
> through four jobs in less than a year, shortly before I started at Masterfoods.  My
> depression has affected my home life, and of course my interaction with my
> children and wife.  At times, due to significant bouts of depression, I have been
> unable to even care for myself.

*Pl. Aff.* ¶ 10.  Defendant construes these assertions as documenting substantial limitations in the

major life activities of working and sleeping.  *See* 28 C.F.R. § 35.104 (major life activities

include such functions as caring for one's self, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working);  *Toyota Motor Mfg., Ky., Inc. v. Williams*,

534 U.S. 184, 197 (2002) (a major life activity is one that is of central importance to daily life).

This Court, construing the evidence in the light most favorable to plaintiff, also accepts

plaintiff's assertions  as alleging substantial limitation in the abilities to care for himself and to

relate to others.  *See MX Group, Inc. V. City of Covington*, 293 F.3d 326, 337 (6th Cir. 2002)

(without deciding the issue, the court noted "that it has been held that 'interacting with others,' is

a major life activity"); *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 134 Fed. Appx. 921, 925-

26(6th Cir. 2005) (analyzing caring for one's self as a major life activity).  Thus, the issue before

the Court is whether plaintiff's depression substantially limits his ability to work, sleep, relate to

others and/or care for himself.

"Substantially limits" is defined as the inability to perform or a severe restriction on the

_____

[3]The Court notes, however, that an inquiry as to whether an individual suffers a disability
must be made on a "case-by-case" basis.  *MX Group, Inc. v. Covington*, 293 F.3d 326, 337 (6th
Cir. 2002) (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002)).

condition, manner or duration under which an individual can perform a particular major life activity, as compared to the average person in the general population.  *Swanson*, 268 F.3d at 315 (citing 29 C.F.R. § 1630.2(j)(1) (1995)).  The determination of whether an impairment substantially limits a major life activity requires consideration of "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  *Id.* (citing 29 C.F.R. § 1630.2(j)(2) (1995)).  "Generally, short-term, temporary restrictions are not substantially limiting."  *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996); *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 487 (6th Cir. 2000) (same); *Brock v. United Grinding Tech., Inc.*, 257 F. Supp.2d 1089, 1094 (S.D. Ohio 2003) (J. Rice) (same).

### a. Working

Plaintiff appears to contend that his depression substantially limits his ability to work because it has caused him to miss work for long periods of time and has "been a factor in his going through a number of jobs in a very short period of time."  *Plaintiff's Memorandum contra* at 11; *Pl. Aff.* ¶ 10.  Defendant does not dispute that working is a major life activity,[4] but instead argues that plaintiff is not substantially limited in his ability to work.  *Defendant's Motion for Summary Judgment* at 9-10.  It is undisputed that, when plaintiff has worked, he has adequately performed his job duties.  *See Pl. Dep.* at 84, 218-19; *Pl. Aff.* ¶¶ 2-5; *Exhibit N*.

Even accepting all plaintiff's assertions as true, plaintiff has not presented evidence of a

---

[4]However, the United States Supreme Court has questioned the inclusion of working as a major life activity.  *See Sutton v. United Airlines*, 527 U.S. 471, 492 (1999) ("there may be some conceptual difficulty in defining 'major life activities' to include work, . . . .").  *See also Williams*, 534 U.S. at 200 ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today.").

substantial limitation in the ability to work within the meaning of the ADA. Although plaintiff has missed work because of his depression, those absences were temporary in nature and do not lead to the conclusion that plaintiff is presently disabled. The longest absence was plaintiff's leave for approximately four months in 2003 and 2004; absences for even longer periods have not been found to be evidence of a substantial limitation. *See e.g., Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998) ("[A] seven-month impairment of [plaintiff's] ability to work . . . is of too short a duration and too vague an extent to be 'substantially limiting.'").

In any event, this Court must consider plaintiff's impairment at the time of the alleged discriminatory acts through the present. *See Roush*, 96 F.3d at 844 ("Although plaintiff underwent a number of surgeries and medical procedures to correct her condition and her ability to work was substantially limited during that period, this does not necessarily lead to the conclusion that plaintiff presently has a disability."). Since February 2004, plaintiff has not taken any leave from work because of his depression. *See Pl. Aff.* ¶ 15. Indeed, plaintiff has been employed with defendant for approximately six years, which somewhat belies his assertion that he is substantially limited in his ability to work.

Further, the mere possibility that plaintiff's depression may recur to the extent that other temporary absences will be necessary is not sufficient to establish that his condition is presently substantially limiting. *See Roush*, 96 F.3d at 844 (the mere possibility that an adverse health condition could recur or require further treatment is not sufficient to establish that the condition was substantially limiting). *See also Swanson*, 268 F.3d at 316 (same). Finally, plaintiff offers no evidence that he is substantially limited as to the condition, manner or duration under which

10

he, compared to the average person in the general population, can work.  *See Swanson*, 268 F.3d at 315 (citing 29 C.F.R. §§ 1630.2(j)(1) and (j)(2) (1995)).

Consequently, considering the temporary nature of plaintiff's inability to work, and the paucity of evidence regarding the nature, severity or expected duration of any limitation, this Court concludes that plaintiff has failed to raise a genuine issue as to whether he is substantially limited in his ability to work.

### b.    *Sleeping*

Defendant also argues that plaintiff is not substantially limited in his ability to sleep.[5] *Defendant's Motion for Summary Judgment* at 10-11.  Plaintiff does not respond to this argument nor does the *Complaint* allege that plaintiff is limited in his ability to sleep.  Indeed, plaintiff addresses his ability, or inability, to sleep in only one sentence of his affidavit: "I have been informed by my doctors that my sleep difficulties are related to the depression."  *Pl. Aff.* ¶ 6.  Plaintiff does not address the nature or severity of his "sleep difficulties," their frequency of occurrence, the duration or expected duration of these difficulties, the long term impact of these difficulties or how his inability to sleep "compare[s] to the average person in the general

_____

[5]Thus, the Court accepts, without deciding, that "sleep" is a major life activity under the ADA.  The United States Court of Appeals for the Sixth Circuit has not specifically held that sleeping is a major life activity:

> Several circuits have concluded that "sleeping" is a major life activity.  *See, e.g., EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1989).  *See also Boerst v. Gen. Mills Operations, Inc.*, 25 Fed. Appx. 403, 2002 WL 59637, at *3 (6th Cir. 2002) (unpublished disposition).  Without addressing this issue, the district court found that plaintiff had not offered evidence to show either that he was diagnosed with sleep apnea or that his sleep apnea limited his major life activities in any way.

*Cartwright v. Lockheed Martin Util. Servs.*, 40 Fed. Appx. 147, 153 (6th Cir. 2002).

11

population." *See Swanson*, 268 F.3d at 315 (citing 29 C.F.R. §§ 1630.2(j)(1) and (j)(2) (1995)).

Plaintiff has therefore failed to satisfy his burden of setting "forth the specific facts showing that there is a genuine issue for trial" with regard to his "sleep difficulties." Fed. R. Civ. P. 56(e). That is, plaintiff has failed to "make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. *See also Brock*, 257 F. Supp.2d at 1094 ("Accordingly, in light of the absence of evidence regarding the extent of Plaintiff's alleged limitations, Plaintiff has failed to create a genuine issue of material fact that he was substantially limited in his ability to sleep . . . .").

### c.    *Relating to others*

In *Plaintiff's Affidavit*, he avers: "My depression has affected my home life, and of course my interaction with my children and wife." *Pl. Aff.* ¶ 10. Construing this statement in the light most favorable to plaintiff, it would appear that plaintiff is alleging that his depression substantially limits the major life activity of relating to others. However, as with the major life activity of sleeping, plaintiff fails to indicate the nature or severity of his inability to relate to others, its frequency of occurrence, its duration or expected duration or its long term impact. Finally, plaintiff does not indicate how this inability "compare[s] to the average person in the general population." *Swanson*, 268 F.3d at 315 (citing 29 C.F.R. §§ 1630.2(j)(1) and (j)(2) (1995)). Under these circumstances, plaintiff has failed to create a genuine issue of material fact that he was substantially limited in his ability to relate to others. *See Brock, supra.*

### d.    *Caring for one's self*

Plaintiff contends that "at times" his depression renders him "unable to care for himself." *Pl. Aff.* ¶ 10.  However, the inability, "at times," to care for one's self is simply not sufficient to constitute a "substantial" limitation because of the temporary nature of the inability.  *See Rousch*, 96 F.3d at 843.  Plaintiff again wholly fails to indicate the nature or severity of his inability to care for himself, its frequency of occurrence, duration or expected duration, or its long term impact.  Again, plaintiff does not indicate how this inability "compare[s] to the average person in the general population."  *See Swanson*, 268 F.3d at 315 (citing 29 C.F.R. §§ 1630.2(j)(1) and (j)(2) (1995)).

Plaintiff appears to contend that he was unable to care for himself on two occasions in the past six years when he came "close to taking" his own life.  *Pl. Aff.* ¶ 10.  Specifically, in May 2000, plaintiff "left his home late at night and was driving around speaking of ending it all. [Plaintiff] had a gun in the vehicle."  *Id.* ¶ 8.  As a result, plaintiff was hospitalized for several days.  *See id.*  Additionally, in the Spring of 2002, plaintiff "considered taking [his] own life" by running the engine of his vehicle with the garage closed.  *Id.* ¶ 9.  Plaintiff concludes that, "at some point, [he] must have decided to live" because his wife found him "semi-conscious in the kitchen and the vehicle was still running."  *Id.*

Plaintiff, however, submits no evidence of any continued thoughts of suicide or attempts to harm himself.  Indeed, this Court must consider the effect of the psychiatric treatment and medication provided plaintiff.  *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (mitigating or corrective measures must be taken into account in judging whether an individual suffers a disability); *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516 (1999) ( a truck driver with high blood pressure did not suffer a "disability" under the ADA where the medication for the

condition allowed him to perform major life activities without substantial limitation).  There is no evidence that the medication and treatment plaintiff received in connection with these episodes were unsuccessful or that the relief provided by them was temporary.  It therefore appears that plaintiff's inability to care for himself during these two incidents was, at worst, temporary.

Considering the temporary nature of plaintiff's inability to care for himself, the mitigating effects of the medication and therapy provided to plaintiff, and the lack of evidence on the nature, severity and impact of the inability in comparison to others, this Court concludes that plaintiff has failed to raise a genuine issue as to whether he is substantially limited in his ability to care for himself.

### e.    Conclusion regarding plaintiff's alleged disability

The evidence–even construed most favorably in plaintiff's favor–established that, although plaintiff may have been temporarily impaired in his ability to care for himself, to work and perhaps to sleep and relate to others by reason of his depression, he was nevertheless not substantially limited in these areas.  *See e.g., Swanson*, 268 F.3d at 316 ("Inferring the evidence in Swanson's favor, it shows that he was impaired in his sleep and communication by his depression but not substantially limited.").  Therefore, plaintiff has failed to establish a factual dispute as to this element of his *prima facie* case and summary judgment in defendant's favor is warranted.  *See Monette*, 90 F.3d at 1185-86 ("If the plaintiff fails to establish a predicate fact necessary to create the presumption of unlawful intent, . . . the 'burden' [to produce a legitimate nondiscriminatory reason for the adverse action] never shifts to the defendant.").[6]

_____

[6]Defendant argues that, even if plaintiff establishes a *prima facie* case, it has offered a legitimate nondiscriminatory reason for its action, which plaintiff cannot show to be pretextual.

Accordingly, *Defendant's Motion for Summary Judgment* as it relates to plaintiff's claim of disability discrimination is meritorious.

**B.     Retaliation**

An ADA retaliation claim also utilizes the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  *See, e.g., Kuriatnyk v. Township of Bazetta*, 93 Fed. Appx. 683, 686 (6th Cir. 2004) (citing *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)) (applying Title VII burden-shifting analysis to ADA retaliation claim); *Clark v. City of Dublin*, 178 Fed.Appx. 522, 525 (6th Cir. 2006) (same).  Under the *McDonnell Douglas/Burdine* paradigm, a plaintiff claiming unlawful retaliation must first establish a *prima facie* by demonstrating that--

> (1) he engaged in a protected activity; (2) his engagement in that protected activity was known to his employer; (3) [his employer, thereafter, took an action that a reasonable employee would have found to be materially adverse]; and (4) a causal link exists between his engagement in the protected activity and the adverse action.

*Kuriatnyk*, 93 Fed. Appx. at 686; *Nguyen v. Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (applying the same standard under Title VII);  *Burlington N. & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2409, 2414-15 (2006) (changing the third prong to the above).  *See also McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 256.  Once a plaintiff establishes a *prima facie* case of retaliation, the burden of going forward then shifts to the defendant employer to articulate a legitimate, nonretaliatory reason for its action.  *See McDonnell Douglas Corp.*, 411 U.S. at 802-3; *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).  If the defendant employer

---

*Defendant's Motion for Summary Judgment* at 11-15.  Because it is clear that plaintiff cannot establish a *prima facie* case of disability discrimination, the Court need not reach this issue.

satisfies its burden, the plaintiff must then prove by a preponderance of the evidence that the defendant intentionally retaliated against him. *See id.* The ultimate burden of persuasion remains throughout this burden-shifting analysis on the plaintiff. *See Burdine*, 450 U.S. at 253; *Wrenn*, 808 F.2d at 501.

In the case *sub judice*, plaintiff alleges that defendant retaliated against him for filing a charge of discrimination with the EEOC on June 6, 2003. In its motion for summary judgment, defendant argues that plaintiff's retaliation claim fails because plaintiff cannot establish a *prima facie* case since he has not suffered a materially adverse action and because he cannot establish a causal link between his filing the EEOC charge and the alleged materially adverse action. The Court agrees.

### 1.    Actionable adverse actions

In order to establish a *prima facie* case of retaliation under the ADA, a plaintiff must establish, *inter alia,* a materially adverse employment action. *Penny v. United Parcel Serv.,* 128 F.3d 408, 415 (6th Cir. 1997). "With respect to [the issue of materially adverse employment actions], we refer to analogous cases decided in the context of age and sex discrimination, because cases involving the ADEA and Title VII are instructive in cases involving the ADA." *Kocsis v. Multi-Case Mgt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996).

The anti-retaliation provision of Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 126 S. Ct. at 2414-15. The "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2409 (citations omitted). As the United States Supreme Court recently explained: "We speak of material adversity because

16

we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Id.* at 2415 (citations omitted).

The standard for judging harm is objective, *i.e.*, judged by the reactions of a reasonable employee. *See id.* This standard is meant to "avoid[] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings, making the standard 'judicially administrable.'" *Id.* Additionally, a court must consider the context in which the alleged materially adverse actions occurred. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* (citing *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81-82 (1998)).

In the instant action, plaintiff alleges six incidents that he characterizes as materially adverse actions.

### a.    *Rescinded written caution notice*

Plaintiff alleges that, in December 2001, he was given a written caution notice for excessive absenteeism, which was eventually rescinded. *Pl. Aff.* ¶ 11 and *Exhibit 6* attached thereto. Plaintiff filed his EEOC charge on June 6, 2003, but he did not include this allegation in the charge. The *Complaint* in this action, however, must be limited "to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir. 1977). The 2001 notice about which plaintiff now complains was not included in the EEOC charge and could not be reasonably expected to grow

17

out of the charge since the action occurred prior to the time that the charge was filed. *See Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). Thus, this alleged materially adverse action falls outside of the scope of the plaintiff's EEOC charge and is, therefore, not properly before the Court.

### b. *Denial of job bidding opportunities*

In *Plaintiff's Affidavit*, plaintiff avers that, in February 2004, after returning from a four month leave of absence, he was informed that he would receive a "write up" for his attendance and that he could not bid on any jobs because of his poor attendance. *Pl. Aff.* ¶ 14.

> [My manager] informed me that since my attendance was considered unacceptable, I would be ineligible to bid on any jobs. . . . As a result of being informed that all of my requests to bid would be rejected, I chose not to apply for any further bids until a year later when the discipline would [have been] rescinded.

*Id.* However, plaintiff's affidavit is contradicted by his prior deposition testimony in which he recounted documented job bids submitted by him in March 2004 and which his manager indicated that she had "reviewed the responsibilities and qualifications for this position and support the candidacy of this associate." *Pl. Dep.* at 188-89; *Exhibits J, K*.

Plaintiff's later affidavit cannot be considered by the Court to the extent it contradicts plaintiff's previous deposition testimony. Conflicts between affidavits and other evidentiary materials do not preclude summary judgment and the Court may disregard the subsequent affidavit unless a legitimate reason is given for the discrepancy. *See Penny v. United Parcel Serv.*, *supra*, 128 F.3d at 415 (party cannot create a genuine issue of material fact by filing an affidavit after summary judgment has been made, that contradicts the earlier deposition testimony); *Dotson v. U.S. Postal Serv.*, 977 F.2d 976, 978 (6th Cir. 1992) (same).

18

To the extent that plaintiff's subsequent affidavit contradicts his prior deposition testimony without explanation, the Court will disregard the affidavit. *See also* 11 James Wm. Moore *et al.*, Moore's Federal Practice § 56.14[1][f] (3d ed. 2001). Accordingly, the evidence properly before this Court suggests that plaintiff was not prevented from bidding on jobs and that, indeed, he in fact bid on jobs with his manager's written approval. Thus, this Court need not address whether the denial of the opportunity to bid on jobs is materially adverse in this context.

### c.    *Threatened written reprimand*

As noted *supra*, in February 2004, upon returning from a four month leave of absence because of his depression, plaintiff was informed by his manager that he would receive a "write up" for poor attendance. *Pl. Aff.* ¶ 14. Plaintiff contends that, "[a]s a result of being told he was being disciplined and he would no longer be eligible to bid on another position, [plaintiff] did not bid on available jobs until a year passed from when he was told he was receiving discipline." *Plaintiff's Memorandum Contra* at 15; *Pl. Aff.* ¶ 14. However, as the Court concluded above, plaintiff's contention is factually unsupported, *i.e.*, plaintiff did in fact bid on jobs during this time period. Thus, plaintiff has not alleged any "harmful" action, let alone an action that was "harmful to the point that it would dissuade a reasonable employee from making or supporting a charge of discrimination." *White*, 126 S. Ct. at 2409. The manager's "threat" of reprimand can be accepted as nothing more than a "petty slight" that is simply not actionable. *See Id.* at 2415.

### d.    *Formal investigation*

In March 2004, defendant investigated an incident where a "slicer machine" on which

plaintiff was working "jammed."  *Pl. Aff.* ¶ 16.  This Court recently explained that, in certain situations, an investigation might constitute an adverse action in the retaliation context.  *Doucet v. Univ. of Cincinnati*, Case No. 1:05-cv-148, 2006 U.S. Dist. LEXIS 49022, *69 n.19 (S.D. Ohio July 19, 2006) (J. Dlott) (citing *White*, 126 S. Ct. at 2409).  Plaintiff complains that the investigation was materially adverse because "[t]his never happened with other employees who had this problem."  *Pl. Aff.* ¶ 16.  Plaintiff, however, fails to explain or establish how this investigation "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *White*, 126 S. Ct. at 2415 (citations omitted).

### e.      *Labeling as a disgruntled employee who should be fired*

In February 2005, plaintiff alleges that he was "unfairly branded as a problem employee" because of his depression.  *Pl. Aff.* ¶ 17.  Specifically, plaintiff contends that he was labeled by his Area Manager as a "disgruntled employee" and that if it were up to the manager plaintiff would "be fired."  *Id.*  This comment, although apparently troubling to plaintiff, simply would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Indeed, in explaining the difference between "significant" and "trivial" harms, the United States Supreme Court recently cited "snubbing" by supervisors or the occasional use of abusive language as examples of trivial harms that are simply not actionable.  *See White*, 126 S. Ct. at 2415.

### f.      *Lower performance evaluations*

Plaintiff complains that, in February 2005, he received an appraisal that "was very unfair" because he received lower ratings than he had received previously and even later.  *Pl. Aff.* ¶ 15.  Again, however, plaintiff simply does not offer any evidence, or even argument, as to

20

any harm caused by the allegedly unfair evaluation. The fact that the evaluation upset plaintiff is simply insufficient to "'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *White*, 126 S. Ct. at 2409.

### 2. Causal connections

Even if plaintiff had alleged actions sufficiently harmful to dissuade a reasonable worker from making or supporting a charge of discrimination, he must still show that there was a causal connection between the filing of his EEOC charge and the alleged adverse actions. *See Allen v. Michigan Dept. of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999). To show a causal connection, "a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a charge." *Id.* (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) and *Jackson v. RKO Bottlers*, 743 F.2d 370, 377 (6th Cir. 1984)). "Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.* (citing *Moon v. Transp. Drivers*, Inc., 836 F.2d 226, 230 (6th Cir. 1987)).

In this action, defendant argues that there is a total absence of evidence from which to draw an inference that any of the adverse actions alleged by plaintiff would not have occurred absent plaintiff's EEOC filing. *Defendant's Motion for Summary Judgment* at 17-19. In his memorandum *contra*, plaintiff does not respond to this argument. He has therefore failed to "set forth specific facts showing that there is a genuine issue for trial" in this regard. *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Nonetheless, the Court explains why plaintiff simply

21

could not, in any event, have met his burden as to this element of his claim.

First, as defendant correctly notes, the timing of defendant's actions do not suggest retaliation. Plaintiff filed his charge with the EEOC on June 6, 2003, and the first of the adverse actions about which he complains occurred eight months later. An inference of causation based on timing alone can be drawn only when the interval between the protected activity and the adverse action is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 273 (2001) (citing as examples *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient)). In this action, an inference of causation based on timing alone is unwarranted.

Second, plaintiff has not offered evidence that he was treated differently than non-disabled fellow employees with whom he is similarly situated. In *Plaintiff's Affidavit*, plaintiff avers that he was investigated for breaking a slicer machine and that "[t]his never happened with the other employees who had this problem." *Plaintiff's Aff.* ¶ 16. In the *Complaint*, plaintiff alleges that, while he was forbidden to bid on jobs based upon his poor attendance, one of his non-disabled coworkers who missed more work than had plaintiff was not precluded from bidding on jobs. *See Complaint* ¶ 15. This evidence is insufficient.

As the United States Court of Appeals for the Sixth Circuit has consistently held, "it is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-[disabled] employees, the plaintiff must show that the 'comparables' are similarly situated in 'all of the relevant aspects.'" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610-11 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) and *Ercegovich v. Goodyear Tire & Rubber*

*Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). To be deemed "similarly-situated" the individuals with whom the plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich*, 154 F.3d at 352 (citing *Mitchell*, 964 F.2d at 583).

In the instant action, plaintiff offers no information as to the co-workers with whom he seeks to compare himself. *See, e.g., Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001) (plaintiff produced no evidence that his coworkers' infractions were as severe or as frequent as his and thus could not establish his *prima facie* case); *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 601 (6th Cir. 2001) (noting that "the employees [the plaintiff] seeks to cast as similarly situated differed from her in several important ways . . . ."). Plaintiff's complaints in this regard are wholly insufficient.

Consequently, plaintiff has failed to raise a material issue as to whether there is a causal connection between his protected activity and the actions that he alleges were materially adverse.

### 3. Conclusion regarding plaintiff's claim of retaliation

Even construing the evidence in the light most favorable to plaintiff, plaintiff has failed to raise a genuine issue of fact as to whether he suffered a materially adverse action and as to whether there was a causal connection between the alleged adverse actions and his filing of the June 6, 2003, EEOC charge. Therefore, plaintiff has failed to establish these elements of his *prima facie* case of retaliation and summary judgment in defendant's favor on this claim is warranted. *See Monette*, 90 F.3d at 1185-86.

23

**WHEREUPON**, *Defendant's Motion for Summary Judgment*, Doc. No. 30, is

**GRANTED** and *Defendant's Motion to Strike*, Doc. No. 41, is **DENIED** as moot.  The Clerk is

**DIRECTED** to enter **FINAL JUDGMENT** in favor of defendant.


November 14, 2006                                      *s/Norah McCann King*
Date                                                  Norah McCann King
                                                      United States Magistrate Judge

24